**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Jeffrey L. CLAUSSEN, Defendant and Appellant.**

No. 18300–a.

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 1994.

Decided Sept. 21, 1994.

Mark Barnett, Atty. Gen., Scott Bogue, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Arnold D. Laubach, Jr. of Pennington County Public Defender's Office, Rapid City, for defendant and appellant.

PER CURIAM.

A jury convicted Jeffrey Claussen (Claussen) of driving or control of a vehicle while having a .10% or more of alcohol in his blood. On appeal Claussen contends that the stop of his vehicle was constitutionally infirm. We affirm.

FACTS

Around midnight of July 17, 1992, Pennington County sheriff's deputies responded to numerous complaints of a loud noise party with juveniles using alcohol at a home in the West Berry Trails subdivision of Rapid City. When they approached the house, beer bottles were thrown at them. They saw juveniles drinking. They retreated and waited for a backup.

When Highway Patrol Trooper Brent Nelson arrived, the officers had a discussion and decided to wait at a point a block away from the house rather than going to the house and risk getting hit with beer bottles. They were on the only road leading out of the area and could see all of the vehicles parked near the house and all of the vehicles leaving the house. They stopped all vehicles leaving the house party to check for juveniles that had been drinking alcohol. They did not stop other vehicles.

Trooper Nelson stopped Claussen's vehicle. He had not observed any equipment violations or moving violations. He did notice Claussen's odor of alcohol. Following field sobriety tests, Claussen was arrested.

Claussen argued to the trial court that, unless authorized by prior judicial warrant, the establishment of a roadblock to investigate all motorists for possible liquor violations constitutes an unconstitutional seizure based on *State v. Olgaard*, 248 N.W.2d 392 (S.D.1976). The state argued that only cars leaving the party were stopped and that the officers had a reasonable suspicion to stop those cars.

The trial court found, in part,

IV.

Due to concerns for the personal safety, officers withdrew from the immediate area and called for backup assistance.

V.

Because of observations that alcohol was present and persons not old enough to consume the same were in fact consuming, the officers made the decision to stop vehicles leaving the party to determine whether the person driving the vehicle was 1) under age and 2) not under the influence of alcohol.

VI.

Law enforcement personnel did in fact stop all vehicles leaving the party area, but no other vehicles.

VII.

The Defendant was the driver of one of the vehicles leaving that party.

It concluded:

Law enforcement officers, based upon the knowledge they had, did have a duty to stop the vehicles leaving the party for the purposes of determining whether or not there were underage drinkers in the vehicles and particularly in this case, whether or not the driver of the vehicle had been drinking to the point of being impaired.

II.

The stop of the Defendant's vehicle was justified and necessary under the circumstances and was a legal stop.

DECISION

Claussen contends that the stop of his vehicle violates the Fourth and Fourteenth amendments to the United States Constitution and Article VI § 11 of the South Dakota Constitution because Trooper Nelson had no

specific and articulable suspicion of a violation before the stop. In addition, Claussen contends that because the decision to establish the roadblock was made by officers in the field and not pursuant to a prior judicial warrant, it constituted an unconstitutional seizure pursuant to this Court's decision in *Olgaard, supra.*

The stop of an automobile and the detention of its occupants is a seizure within the meaning of the Fourth and Fourteenth amendments to the United States Constitution. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "At a minimum, then, law enforcement must have an articulable and reasonable suspicion that *the motorist* is subject to seizure for violation of the law before the stop occurs." *State v. Thill,* 474 N.W.2d 86, 87 (S.D.1991) (emphasis added).* A police officer may not stop a vehicle without a reasonable basis for doing so; the officer must have a specific and articulable suspicion of a violation before a vehicle stop will be justified. *State v. Anderson,* 331 N.W.2d 568 (S.D.1983). While the factual basis required to support a routine traffic stop is minimal, it must be based upon specific, articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. *Id.*

The question becomes whether Trooper Nelson had an individualized suspicion that Claussen violated the law before stopping him. Under the facts of this case, Trooper Nelson did not. Claussen, who was twenty-three years old, was merely driving away from a loud, unruly party where juveniles were seen drinking. There was no observation of Claussen drinking, pelting officers with beer bottles and then driving away. There was no observation of any moving violations or equipment violations committed by Claussen prior to the stop. Prior to the stop there was simply nothing to suggest that Claussen violated the law.

Under the circumstances of this case, however, an individualized suspicion of a law violation was not necessary before stopping Claussen's vehicle at the roadblock. Here law enforcement was called to the scene of a boisterous party where they observed juveniles drinking alcohol and were assaulted by thrown beer bottles. Rather than aggravate the situation, they set up a roadblock within sight of the house on the only road having access to the house. All vehicles leaving the party were stopped. Prior to setting up the roadblock the officers certainly had probable cause that crimes had been committed.

"[R]oadblocks can properly be established when a serious crime has been committed for purposes of investigation or apprehension of a suspect where exigent circumstances exist and where the roadblock is reasonable in light of the particular circumstances of the case." *Lacy v. State,* 608 P.2d 19 (Alaska 1980). Police officers are not required to have individualized suspicion before stopping vehicles at a roadblock under these conditions, but

> There is no unbridled discretion to establish roadblocks, and any degree of harassment is minimized by the probable cause requirement, the limited scope of the search and the other limits on the authority to use this procedure. The existence of probable cause to believe a felony has been committed justifies the greater intrusion of a limited search of each car for suspects.

*State v. Silvernail,* 25 Wash.App. 185, 190, 605 P.2d 1279, 1283 (1980). While roadblock stops do interfere with freedom of movement, are inconvenient and consume some time, a requirement of individualized suspicion defeats the public's interest in apprehending suspects who commit serious crimes. *State v. Tykwinski,* 170 Ariz. 365, 824 P.2d 761 (App.1991).

> But, while the roadblock tactic, as compared to the typical stop and frisk situation, requires *more* evidence that a crime has occurred, by its very nature it requires *less* evidence that any particular vehicle stopped is occupied by the perpetrator of that crime. Indeed, there need be no suspicion at all with regard to any particular vehicle, except that which exists by virtue of it being in the locale of the roadblock.

---

* In *Thill* we held that a police officer's observation of a vehicle turning around to avoid going through a sobriety roadblock constituted a reasonable suspicion of a law violation.

3 W. LaFave, *Search and Seizure* (2d ed.) § 9.5 at 549 (1987) (emphasis original; footnotes omitted).

The view that the Fourth Amendment does not require law enforcement, when conducting a roadblock stop following a serious crime, to have an individualized suspicion that the occupants of a particular vehicle stopped were involved in the crime under investigation is supported by United States Supreme Court decisions. The Court has not allowed *random* stops of vehicles for driver's licenses or illegal aliens absent reasonable suspicion to justify the stop. *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Delaware v. Prouse*, supra. The Court has upheld, however, stops of vehicles at fixed checkpoints to determine illegal alien status absent individualized suspicion and Michigan's use of sobriety checkpoints. *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *Michigan State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990).

The Fourth Amendment does not create barriers to reasonable law enforcement activities in the area of a detected crime.

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, [*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ] recognizes that it may be the essence of good police work to adopt an intermediate response.

*Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). By virtue of the exigency of fleeing, perhaps dangerous, suspects, we think the stops of all persons found on a likely access route to the scene of the crime was reasonable, both in its purpose and in the manner it was conducted. *See United States v. Constantine*, 567 F.2d 266 (4th Cir.1977) *cert. denied*, 435 U.S. 926, 98 S.Ct. 1492, 55 L.Ed.2d 520 (1978); *United States v. Jackson*, 448 F.2d 963 (9th Cir. 1971).

*United States v. Harper*, 617 F.2d 35, 41 (4th Cir.1980).

 In this case, after observing juveniles consume alcohol and enduring being assaulted by beer bottles, law enforcement officers at the scene determined to wait and stop all vehicles leaving the party. Under the circumstances of this case it was reasonable law enforcement and proper under the Fourth and Fourteenth Amendments.

Affirmed.

MILLER, C.J., WUEST and SABERS, JJ., and HENDERSON, Retired Justice, participating.

KONENKAMP, J., not having been a member of the Court at the time this action was submitted to the Court did not participate.